## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET M. JAGER and ROBERT W. JAGER, | ) | Case No. 3:20-cv-15 |
| Plaintiffs, | ) | |
| | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| DEPARTMENT OF ENVIRONMENTAL PROTECTION, DAWN HERB, MICHAEL TOMEI, AND ELLIOT HEGGENSTALLER, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Before the Court is Defendants Pennsylvania Department of Environmental Protection (the "DEP"), Dawn Herb, Michael Tomei, and Elliot Heggenstaller's (collectively the "individual defendants") Motion to Dismiss Plaintiffs Margaret M. Jager and Robert W. Jager's (the "Jagers") Amended Complaint. (ECF No. 29) The Amended Complaint includes numerous claims against all the Defendants under federal and state law. The claims against the individual defendants are in both their official and personal capacities.

The Defendants contend that, because the claims against the DEP were dismissed without leave to amend, the Amended Complaint improperly included claims against the DEP. The Defendants also contend that the claims against the individual defendants in their official capacities and the state law claims against them in their personal capacities should be dismissed because they are barred by sovereign immunity. Finally, the Defendants contend that the federal claims against the individual defendants in their personal capacities all fail to a state claim.

For the following reasons, the Court:  (1) construes the inclusion of the DEP as a defendant as a motion for reconsideration of the Court's prior dismissal of the claims against the DEP and denies the motion for reconsideration, and (2) **GRANTS** the Motion to Dismiss the claims against Herb, Tomei, and Heggenstaller in both their official and personal capacities.

## I.    Jurisdiction and Venue

This Court has subject-matter jurisdiction over the Jagers' constitutional claims because they arise under federal law.  28 U.S.C. §§ 1331, 1343(a)(3).  This Court has subject-matter jurisdiction over the Jagers' remaining state law claims because they form part of the same case or controversy as the constitutional claims.  28 U.S.C. § 1367.

Venue is proper in this district because it embraces Clearfield County, where this action was originally filed.  28 U.S.C. § 1441.

## II.    Procedural Background

The Jagers initially filed this *pro se* lawsuit in the Court of Common Pleas of Clearfield County on January 13, 2020.  (ECF No. 1-2)  The DEP timely removed the case to this Court on January 29, 2020.  (ECF No. 1)  The only defendant at that time was the DEP.  (*Id.*)  The DEP moved to dismiss the Complaint, arguing that sovereign immunity bars each of the Jagers' claims against the DEP.  (ECF No. 5)  The Court granted the Motion and dismissed the claims against the DEP with prejudice.  (ECF No. 18)  However, the Court permitted the Jagers to file an Amended Complaint against defendants not subject to sovereign immunity.  (*Id.* at 6)

The Jagers filed an Amended Complaint alleging numerous federal and state claims against the DEP as well as several DEP employees—Dawn Herb, Michael Tomei, and Elliot Heggenstaller—in both their official and personal capacities. (ECF No. 26) The Defendants moved to dismiss the Amended Complaint arguing that the claims against the DEP had already been dismissed without leave to amend, the claims against the individual defendants in their official capacities are barred by sovereign immunity, none of the federal claims against the individual defendants in their personal capacities state a claim, and all of the state law claims against the individual defendants are barred by sovereign immunity. (ECF Nos. 29, 30) The Jagers filed a response in opposition. (ECF No. 35) This motion is ripe for disposition.

### III.    Factual Background[1]

This case arises from the Jagers' purchase of a farm in Pennsylvania in 2012. (ECF No. 1-2 ¶ 1) The Amended Complaint does not provide the location of the farm. Although the Jagers planned to move to the farm, medical issues forced them to refrain from doing so and they were unable to move in. (*Id.* ¶ 4) When the Jagers purchased the farm, there were large piles of manure all over the farm. (*Id.* ¶ 1) The Jagers rented out the farm to a tenant who inflicted serious damage on the premises, and the prior owner failed to uphold her promise to continue handling the manure in an appropriate manner. (*Id.* ¶¶ 4–5)

---

[1] Unless otherwise noted, the Court draws the following facts, which it accepts as true for purposes of deciding the motion, from the Jagers' Amended Complaint (ECF No. 26) Because the Amended Complaint omits some basic facts that were previously included in the Complaint which are helpful for providing context and a coherent factual narrative, the Court also draws some facts from the Complaint. (ECF No. 1-2)

In April 2015, the Defendants contacted the Jagers and instructed them that they had to "remove the manure."  (ECF No. 26 at 10)  The Defendants told the Jagers that manure runoff from their property was going into the dry roadway ditches and polluting the waters of the Commonwealth.  (*Id.* at 8)  The Defendants stated that the manure piles had to be at least 100 feet from the diches.  (*Id.* at 10)  However, at that time, the manure piles were over 200 feet away from the ditch and had never been within 100 feet of the roadway ditches. (*Id.*)

Dawn Herb is an attorney for the DEP who previously worked at the Williamsport office and is now working at the Harrisburg office. *(Id.* at 8)  Michael Tomei was a manager at the Williamsport DEP office.  (*Id.*)  Elliot Heggenstaller is a Water Quality Specialist at the Williamsport DEP office.  (*Id.*)

In their discussions with Robert Jager, Tomei and Heggenstaller "showed disdain for him." (*Id.* at 10)  Tomei and Heggenstallar were asked by the Jagers to show them where polluted water was going into the roadside ditch and Tomei and Heggenstaller "agreed that there was no polluted water going into the dry roadside ditch." (*Id.* at 10)  But on the last day of Heggenstaller's inspection of the property, Heggenstaller said that manure was going down the driveway to the dry roadside ditch and was polluting the Commonwealth. (*Id.* at 10)  The report created after the inspection of the property also stated that water from the manure piles was running into the roadside ditch.  (*Id.*)  Margaret Jager took photographs of the area around this time showing that no water was running down the driveway or running into the ditch. (*Id.*)

4

The DEP eventually instituted some kind of legal proceeding with regard to the manure. (*Id.* at 11) Instituting a legal proceeding contradicted a prior statement of Tomei that the DEP would not be taking the Jagers court. (*Id.* at 10–11) Then, at some point, Tomei told the Jagers that they would have an opportunity to have their day in court. (*Id.* at 11) But the Jagers were not given notice of the date and time of their court hearing. (*Id.*) Tomei told the Jagers that there were would not be a hearing but also told them that, if there were to be a hearing, it would be on the 27th of the month. (*Id.*) On the 26th, the Jagers called Patricia Havens, the DEP manager, to inquire into whether there would be a hearing the next day. (*Id.*) Havens informed the Jagers that the hearing had already been conducted earlier that same day. (*Id.*) At the hearing, Judge Ledbetter stated that the Jagers "'should store the manure 100 feet from Commonwealth waters' and provide a best Management Plan to the DEP." (*Id.*) The Jagers subsequently submitted a management plan to the DEP. (*Id.*)

The Amended Complaint also references a second court hearing, referred to as a "penalty hearing" before Judge Quigley, that the Jagers attended. (*Id.* at 11–12) The Amended Complaint does not discuss what occurred at this hearing beyond that judge stated that the Jagers "had several issues [they] could appeal" and that the judge told Herb not to contact the bank. (*Id.*) There is also a passing reference in the Amended Complaint to the Jagers believing that the DEP placed a lien on the property without their knowledge.[2] (*Id.* at 21)

---

[2] No further information is provided about this lien in the Amended Complaint or about how it relates (if at all) to the Jagers losing their farm.

The Jagers spent over $50,000 for supplies, equipment, and maintenance to move the manure, and Robert Jager had to give up his business in order to "concentrate all his time trying to get rid of the manure." (*Id.* at 10, 13) The Jagers' tenants also refused to pay rent. (*Id.* at 13) As a result of these expenses, Robert Jager being forced to give up his business, and tenants refusing to pay rent, the Jagers began having difficulty making their mortgage payments. (*Id.*)

The Jagers had a mortgage on the property with "Indiana Bank." (*Id.* at 8) The Jagers fell behind on their mortgage payments and eventually owed the bank $31,000 to "get up to date" on their mortgage. (*Id.* at 11) The Jagers had $10,000 in an IRA and $4,000 in cash that they intended to put toward the mortgage. (*Id.*) Margaret Jager had also inherited property in New York and, although it had not yet gone through probate, she had contracted with a neighbor in New York to sell the property for $31,000. (*Id.* at 11)

The Defendants conspired together to interfere with the Jagers' mortgage contract with the bank and colluded with the bank to take the Jagers' property from them. (*Id.* at 8, 12) In particular, Herb contacted the bank and informed them that the Jagers were not in compliance with DEP regulations. (*Id.* at 12) Without the Defendants' interference, the Jagers "would have been in a good position for the bank to make an agreement with [them] and wait for probate on money that [they] were sure to receive."[3] (*Id.* at 11)

The bank foreclosed on the property. (*Id.* at 20) In December of an unknown year, it was subject to a sheriff's sale. Nobody bought the property at the sale, so the bank

---

[3] As of the date of the filing of the Amended Complaint, the property in New York is "still tied up in Long Island with the original trustee." (ECF No. 26 at 11)

purchased it back for one dollar.  (*Id.*)  The bank informed the Jagers that they could purchase it back from the bank for $150,000, but the bank later added that an additional $50,000 would be required to cover taxes owed on the property.  (*Id.* at 20)  The Jagers lined-up several investors to help them buy back the property.  (*Id.*)  However, when one of the investors contacted the bank, the bank stated that the only way they could purchase the property was if the Jagers, their tenants, and their animals were no longer on the property. (*Id.* at 20–21)

As a result of Defendants' actions, the Jagers lost their farm and their home, and the Defendants' actions caused them to experience ill health, "general financial and personal destruction," and damage to their reputations.  (*Id.* at 9)

## IV.    Legal Standard

The Court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails "to state a claim upon which relief can be granted."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).  But detailed pleading is not generally required.  *Id.*  The Federal Rules of Civil Procedure demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claims are and the grounds upon which they rest.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[4]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 675

---

[4] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *see id.* at 675–79.  Thus, the Third Circuit has described the process as a three-step

(2009). First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## V.     Discussion

### a.     Consideration of Pro Se Complaints

Where, as here, a complaint is filed pro se, the Court "must liberally construe [the] pleadings" and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (citation omitted). However, "if a pro se complaint is so confusing or unintelligible that no party could possibly understand or reply to it" a court should dismiss the case pursuant to Rule 8(a). *In re Hudson*, No. CIV.A. 05-1611, 2006 WL 2380784, at *1 (W.D. Pa. Aug. 16, 2006) (quoting

---

approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

*Cole v. Commonwealth Federal*, No. CIV. A. 94–6099, 1994 WL 618464, *1 (E.D. Pa. Nov. 8, 1994)).  Here, the Defendants express concerns that the Amended Complaint is so confusing and unintelligible that it is impossible for them to decipher all of the claims that it may contain or identify what the factual allegations are.  (ECF No. 30 at 2)  The Court has the same issues when attempting to parse the Amended Complaint.  By no means is the Amended Complaint a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Nevertheless, the Defendants in their Motion attempt to parse the Amended Complaint and address a myriad of possible claims in it.  (ECF No. 30)  The Court does the same and addresses the claims that it is able to identify in the Amended Complaint.

The Jagers bring claims against the DEP and the individual named plaintiffs in their official and personal capacities under 42 U.S.C. § 1983 for denial of their Fifth Amendment right to due process, Fourteenth Amendment right to procedural and substantive due process, and Fourteenth Amendment right to equal protection.  (ECF No. 26)  The Jagers also bring numerous state law claims against the DEP and the individual named defendants in their official and personal capacities for:  collusion, tortious interference with a contract, conspiracy, violating the Pennsylvania Right to Farm Act, violating the Pennsylvania Clean Streams Law, violating their "grandfathered rights," and intentional and negligent infliction of emotional distress.  (*Id.*)

### b.  Statute of Limitations

The Defendants move to dismiss the Jagers' claims under Rule 12(b)(6) because they are barred by the statute of limitations.  The length of the statute of limitations for a § 1983

claim is governed by the personal injury tort law of the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons. Stat. § 5524(2); *see also Kach v. Hose*, 589 F.3d 626, 634–35 (3d Cir. 2009).

The running of the statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). Where the bar is not apparent on the face of the complaint, a statute of limitations defense is to be pleaded in the answer. *See Robinson*, 313 F.3d at 135.

Here, the statute of limitations defense is not apparent on the face of the complaint. Although, it appears likely that some of events in the complaint occurred outside the statute of limitations, it is not apparent on the face of the complaint. The Amended Complaint is sparse on the dates of events and, where a date is given, the year is frequently omitted. Indeed, the only year for a specific event listed in the complaint is that "Defendants told Plaintiffs in April 2015 to remove the manure." (ECF No. 26 at 10) This appears to be the beginning of the Jagers' interactions with the Defendants. The Complaint was filed on January 13, 2020, and the Amended Complaint was filed on June 22, 2020. (ECF Nos. 1-2, 26) Thus, assuming that all of the factual allegations in the Amended Complaint occurred

prior to the date the Complaint was filed, all that is apparent on the face of the Amended Complaint is that the events in question occurred sometime between April 2015 and January 2020.  Accordingly, the statute of limitations defense is not apparent on the face of the complaint and the motion to dismiss for failure to state a claim under Rule 12(b)(6) for the claims being barred by the statute of limitations is denied.

### c.  Claims Against the Department of Environmental Policy

In a previous order, the Court dismissed the Jagers' claims against the DEP with prejudice, but allowed the Jagers to file an Amended Complaint against possible other defendants not subject to sovereign immunity.  (ECF No. 18)  The Jagers' Amended Complaint, however, includes the DEP as a defendant and asserts claims against DEP.  (ECF No. 26)  Because the Jagers' claims against DEP were dismissed with prejudice, the Jagers improperly included claims against the DEP in their Amended Complaint.

However, the Amended Complaint is also styled as a motion for leave to amend the complaint and asserts that two exceptions to sovereign immunity apply in this case.  (ECF No. 26 at 2)  Liberally construed, the Jagers' inclusion of the DEP in their complaint despite the claims against the DEP having been previously dismissed with prejudice, and their assertion that two exceptions to sovereign immunity apply, could be considered a motion for reconsideration.  *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010).

"A motion for reconsideration is a limited vehicle used 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Jackson v. City of Philadelphia*, 535 F. App'x 64, 69 (3d Cir. 2013) (quoting *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176

F.3d 669, 677 (3d Cir.1999)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014) (quoting *Max's Seafood Café*, 176 F.3d at 677) (internal quotation marks omitted).

"Motions for reconsideration are not designed to provide litigants with a 'second bite at the apple.'" *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, No. CV 10-1609, 2017 WL 432947, at *2 (W.D. Pa. Feb. 1, 2017) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)). "A motion for reconsideration is not to be used to relitigate, or 'rehash,' issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made." *Cole's Wexford Hotel*, 2017 WL 432947, at *2 (citing *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998)). "By reason of the interest in finality, at least at the district court level, motions for reconsideration should be sparingly granted." *Cole's Wexford Hotel*, 2017 WL 432947, at *1.

The Jagers contend that sovereign immunity does not apply to their claims against the DEP because two exceptions to sovereign immunity are applicable: the "care custody, or control of personal property in the possession or control of Commonwealth parties" exception and the "dangerous condition of Commonwealth agency real estate and sidewalks" exception. 42 Pa. Cons. Stat. § 8522(b)(3)–(4). The Jagers' only argument for why these exceptions to sovereign immunity apply is because "the manure runoff is going

into [the Commonwealth's] dry roadway ditches." (ECF No. 26 at 2) In dismissing the Complaint, the Court previously considered the exceptions to sovereign immunity and found that none applied. (ECF No. 18 at 5) The first two grounds for reconsideration are not applicable, but the Jagers' argument could be construed to fall into the third ground for a motion for reconsideration—"the need to correct a clear error of law or fact to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677 (citation omitted).

The DEP can claim Eleventh Amendment sovereign immunity because it is an agency of the Commonwealth of Pennsylvania. *See Frompovicz v. Pa. Dep't of Env't Prot.*, No. 5:17-CV-2790, 2018 WL 1444168, at *2 (E.D. Pa. Mar. 22, 2018); *Pioneer Aggregates, Inc. v. Pa. Dep't of Env't Prot.*, No. 3:11-CV-00325, 2012 WL 4364073, at *4–5 (M.D. Pa. Sept. 21, 2012). Sovereign immunity applies to intentional tort claims and negligence claims brought against the Commonwealth, unless the Commonwealth has expressly waived its immunity. *Ioven v. Nestel*, 150 A.3d 571, 573 (Pa. Commw. Ct. 2016); *see* 1 Pa. Cons. Stat. § 2310. Sovereign immunity is only waived for claims "arising out of a negligent act." 42 Pa. Cons. Stat. § 8522(a). The Commonwealth has waived sovereign immunity for negligent acts committed by the Commonwealth or its agents involving: (1) vehicle liability; (2) medical professional liability; (3) Commonwealth custody or care of personal property; (4) Commonwealth real property; (5) potholes and other dangerous conditions; (6) custody or care of animals; (7) liquor sales; (8) activities of the Pennsylvania National Guard; (9) toxins or vaccines; and (10) sexual abuse. 42 Pa. Cons. Stat. § 8522(b). The exceptions to sovereign immunity are to be narrowly construed. *Dean v. Commonwealth Dep't of Transp.*, 751 A.2d 1130, 1134 (Pa. 2000).

The "Commonwealth real estate, highways and sidewalks" exception waives sovereign immunity for acts by a Commonwealth party for damages caused by:

> A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa. Cons. Stat. § 8522(b)(4).  The real estate exception only applies to injuries "caused by a substance or an object on Commonwealth real estate" and must allege that a dangerous condition "deprived, originated, or had as its source the Commonwealth realty." *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 443 (Pa. 2001) (quoting *Snyder v. Harmon*, 562 A.2d 307, 311 (Pa. 1989)) (cleaned up).

The Jagers contend that this exception applies because "[t]he Defendants have stated that manure runoff is going into their dry roadway ditches" and the ditch is "[p]art of the Commonwealth.  (ECF No. 26 at 2, 9)  They do not allege that any real estate had a dangerous condition or that any of their injuries were "caused by a substance or object on Commonwealth real estate."  *Id.*  Accordingly, the real estate exception to sovereign immunity is inapplicable.

The second exception that the Jagers raise is § 8522(b)(3), which is titled "[c]are, custody or control of personal property," and waives sovereign immunity for acts by a Commonwealth party for damages caused by:

> The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to

actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

42 Pa. C.S. § 8522(b)(3).  It is well established that this exception applies only where "the property itself causes the injury." *Pyeritz v. Com.,* 613 Pa. 80, 94, 32 A.3d 687, 696 (Pa. 2011) (Eakin, J., concurring); *see Pa. State Police v. Klimek,* 839 A.2d 1173, 1175 (Pa. Commw. Ct. 2003).  The Jagers do not explain why they believe this exception applies.  Because the Amended Complaint does not allege that any property in the care, custody or control of Commonwealth parties caused the Jagers an injury, this exception is inapplicable.

Therefore, construed as a motion for reconsideration of the Court's prior sovereign immunity ruling, the motion is denied.  The DEP has not waived sovereign immunity. Accordingly, the claims against the DEP continue to be dismissed with prejudice.

### d. Claims Against Individual Defendants in their Official Capacities

In their Amended Complaint, the Jagers add claims against Herb, Tomei, and Heggenstaller in both their official and personal capacities.  (ECF No 26 at 1, 7 (stating that "we're suing the added state Defendants in their individual capacity for damages, not merely in their capacity as state officials"))  The Defendants move to dismiss the claims against Herb, Tomei, and Heggenstaller in their official capacities because the claims are barred by sovereign immunity and sovereign immunity has not been waived.  (ECF No. 30 at 11)

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  "As such, it is no different from a suit against the State itself." *Id.*

Pennsylvania has not waived sovereign immunity for suits against individuals in their official capacities.  *See* 1 Pa Cons. Stat. § 2310 (stating that the Commonwealth "and its officials and employees acting within the scope of their duties . . . enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity"); *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992) ("[W]hen an employee of a Commonwealth agency was acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims.").  As discussed in the previous section and in the Court's Memorandum Order dismissing the Complaint (ECF No. 6), none of the exceptions to sovereign immunity apply here.  Accordingly, sovereign immunity bars the Jagers' claims against the individual defendants in their official capacities and these claims are dismissed.

### e.  Claims Against Individual Defendants in their Personal Capacities

The claims against the individual defendants fall into two categories:  federal claims under 42 U.S.C. § 1983 and claims under state law.

### 1.  Federal Claims Under § 1983

In its relevant part, 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Section 1983 does not create any substantive rights, but instead provides a remedy for violations of a federal constitutional or statutory right. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid § 1983 claim, a plaintiff "must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). If a § 1983 claim is based on a Due Process violation—either substantive or procedural—the plaintiff must allege the deprivation of a constitutionally protected interest. *See O'Donnell v. Simon*, 362 F. App'x 300, 303 n.3 (3d Cir. 2010) (citing *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1256 (3d Cir. 1994)).

In a § 1983 action, "a plaintiff must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, No. 1:04-cv-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir.2006)). "Individual liability can be imposed under § 1983 only if the defendant played an 'affirmative part' in the alleged misconduct." *Alexander v. Fritch*, 396 F. App'x 867, 874–75 (3d Cir. 2010) (per curiam). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Allegations of personal involvement must be made with "appropriate particularity." *Id.* Thus, a plaintiff seeking relief under § 1983 must plausibly allege "with appropriate particularity" that each defendant was personally involved in the purportedly wrongful conduct *Scheing v. Fountain*, 729 F. App'x 175, 178 (3d Cir. 2018).

The Amended Complaint alleges violations of the Jagers': (1) Fifth Amendment right to due process; (2) Fourteenth Amendment right to due process (procedural and

substantive); and (3) Fourteenth Amendment right to equal protection. (ECF No. 26 at 15–16, 18–19)

The Defendants contend that the Amended Complaint does not make sufficient factual allegations to support the contention that the individual defendants were personally involved in the conduct underlying the Jagers' § 1983 claims and, even if it does, the Amended Complaint nonetheless fails to state a claim under § 1983.

The Amended Complaint fails to allege with particularity that any individual defendant was personally involved in the purportedly wrongful conduct. There are few specific factual allegations in the Amended Complaint. Of the factual allegations in the Amended Complaint, most fail to identify a specific individual or individuals were involved in a particular act. For example, the Amended Complaint states generally that "Defendants accused the Plaintiffs of polluting the Commonwealth waters by allowing the manure to go down the driveway and into the dry roadside ditch" which was a lie (ECF No. 26 at 9), and "Defendants told Plaintiffs in April 2015 to remove the manure." (*Id.* at 10) Allegations like these in the Amended Complaint fail to adequately allege that Herb, Tomei, or Heggenstaller were personally involved in any alleged violations of the Jagers' constitutional rights. Further, the allegations are so devoid of particularity and "factual enhancement" that they do not permit the Court to infer that any of these defendants personally participated in depriving the Jagers of any of their constitutional rights. *Scheing*, 729 F. App'x at 179 (quoting *Iqbal*, 556 U.S. at 678).

There are only a few instances where the Amended Complaint alleges that a particular defendant took an action. The instances the Court identifies are: (1) Tomei and

Heggenstaller "showed disdain for [Robert Jager] because he followed them around and asked them to show [him] . . . where polluted water was going into the dry roadside ditch" (ECF No. 26 at 10); (2) Tomei told the Jagers that they would not be taken to Court which "lulled [them] into a false sense of security" (*Id.* at 10–11); (3) Tomei told the Jagers that "there would not be a hearing but if something changed it might be on the 27th" (*Id.* at 11); and (4) Herb said she was going to contact the Jagers' bank to tell them that they were not in compliance with the DEP's regulations and subsequently contacted the bank and told it the Jagers were not in compliance.  (*Id.* at 12)

### (a) Fifth Amendment Due Process

The Fifth Amendment's guarantees of due process apply only to the federal government, not to actions of the states, including the Commonwealth of Pennsylvania. *Citizens for Health v. Leavitt*, 428 F.3d 167, 1788 n.11 (3d Cir. 2005).  As the individual defendants are state employees being sued in their personal capacities for actions done in their capacities as state employees, the Fifth Amendment does not apply to their actions. *See Dinicola v. DiPaolo*, 945 F. Supp. 848, 864 n.9 (W.D. Pa. 1996).  Accordingly, the Jagers' Fifth Amendment claims fail.

### (b) Fourteenth Amendment:  Procedural Due Process

A plaintiff who brings a § 1983 suit alleging a violation of procedural due process must allege and prove that:  (1) he or she was deprived of a protected liberty or property interest; (2) this deprivation was without due process; (3) the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4)  the defendant was acting under color of state law; and (5) the plaintiff suffered injury

as a result of the deprivation without due process.  *Sample v. Diecks*, 885 F.2d 1099, 1113–14 (3d Cir. 1989).

Although the Amended Complaint alleges that the Jagers' procedural due process rights were violated, it fails to allege facts that could plausibly support a claim that their rights were violated.  The Amended Complaint alleges that the Jagers were deprived of their farm.[5]  It references a hearing before Judge Ledbetter and a penalty hearing before Judge Quigley but gives no indication of anything that could be considered a deprivation of property having occurred at either hearing.  (ECF No. 26 at 11)

Instead, the Amended Complaint is clear that it was the bank foreclosing on the farm because the Jagers were $31,000 behind in mortgage payments, not the defendants, that deprived the Jagers of their property.  The only action by one of the defendants alleged in the Amended Complaint related to the foreclosure by the bank is Tomei informing the bank that the farm was not in compliance with DEP regulations.  (ECF No. 26 at 12)  The Amended Complaint concludes that this statement by Tomei caused the bank to foreclose because, after the statement was made, the bank was not willing to negotiate with the Jagers regarding the back payments they owed.  (*Id.* at 11 ("If the DEP had not interfered with our contract with the bank we would have been in a good position for the bank to make an agreement with us or wait for probate on the money that they were sure to receive."); 12; 14 (stating "if the Defendants did not interfere in our dealings with the bank we would still

---

[5] There is a passing reference to a belief that the DEP placed a lien on the property without their knowledge.  (*Id.* at 21)  The Amended Complaint does not link a lien on the property to the foreclosure, nor does it allege any action by any of the individual defendants related to the imposition of a lien on the property.

have our property and we would be looking at ways to reorganize our debts")) The causal link between Tomei telling the bank about the farm not being in compliance and the foreclosure is so vague, attenuated, and implausible that it fails to state a claim. Not only is it implausible that Tomei's statement caused the bank to foreclose on the farm, it was the bank's independent decision to foreclose on the property that resulted in them losing the farm.[6]

The Amended Complaint also appears to allege a procedural due process violation from not being notified of the hearing before Judge Ledbetter on the 26th. (*Id.* at 11) The only identifiable action by one of the individual defendants is Tomei stating that that a hearing would likely not be held but telling the Jagers that "if something changed [the hearing] might be on the 27th." (ECF No. 26 at 11) This fails to allege a procedural due process violation. The Amended Complaint does not allege that they were deprived of a protected property interest at this hearing or that they suffered any injury as a result of this hearing. The Jagers allege that, at the hearing, the judge only stated that they should "'store the manure 100 feet from the Commonwealth waters' and provide a best Management Plan to the DEP." (ECF No. 26 at 11) The Jagers state that they subsequently provided the DEP with a best management plan and that they were "always over 100 ft away from the ditch . . . thereby adhering to the DEP's standard rules." (*Id.*) Thus, the Jagers do not allege that anything substantive occurred at this hearing. Further, attendance at a hearing is not

---

[6] That the Jagers may have reached an agreement with the bank to avoid foreclosure is speculative at best and, even if an agreement was reached, the money from the sale of the property Margaret Jager inherited that they intended to sell and use the proceeds from to get up to date with the mortgage never occurred and the property is still "tied up . . . with the original trustee." (*Id.* at 11)

itself a liberty or property interest and not attending the hearing itself does not constitute and injury.

### (c) Fourteenth Amendment: Substantive Due Process

A violation of substantive due process occurs if a government official "engages in 'an abuse of executive power so clearly unjustified by *any* legitimate objective of law enforcement' that it is barred by the Fourteenth Amendment." *Button v. Snelson*, 679 F. App'x 150, 153 (3d Cir. 2017) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). To establish a substantive due process claim under § 1983, a plaintiff must show that the defendants (1) deprived the plaintiff of a substantive due process right (2) while acting under color of law. *Id.* Under the first prong, the plaintiff must show that the "particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). "[O]nly the most egregious official conduct" meets the "shocks the conscience standard." *United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003) (quoting *Lewis*, 523 U.S. at 846).

The Amended Complaint does not allege that any of the individual defendants deprived the Jagers of a protected interest and none of the defendants' actions could plausibly be construed as sufficiently conscience-shocking to support a substantive due process claim. *See Pahler v. City of Wilkes-Barre*, 31 F. App'x 69, 72 (3d Cir. 2002); *R.B. v. Westmoreland Cnty.*, 526 F. App'x 181, 186 (3d Cir. 2013). Accordingly, the Amended Complaint fails to allege a Fourteenth Amendment substantive due process claim.

**(d) Fourteenth Amendment:  Equal Protection**

The Jagers allege a violation of the Equal Protection Clause because the DEP went after them for violating environmental regulations for having a pile of horse manure less than 100 feet from a roadside ditch, whereas the DEP did not go after a neighbor whose cattle occasionally stand and defecate in a river.  (ECF No. 26 at 18–19)

To state a § 1983 equal protection claim a plaintiff must allege that:  (1) he or she is a member of a protected class and (2) he or she received different treatment than that received by other similarly situated individuals. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir.1992).  The Jagers do not adequately allege either element.  There is nothing in the Amended Complaint to suggest that the Jagers are members of a protected class.  Nor are the Jagers similarly situated to the owners of the herd of cattle—the environmental impacts caused by runoff from non-moving large piles of manure going into a roadside ditch are different in relevant respects from cattle that occasionally stand in a river and defecate in the river.  *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (explaining that to be similarly situated a comparator must be alike "in all relevant aspects" (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))).  In addition, the Amended Complaint does not sufficiently allege that any of the individual defendants were personally involved in depriving them of their equal protection rights.  Therefore, the Amended Complaint does not state an equal protection claim.

Accordingly, the Jagers have not stated a § 1983 claim against any of the individual defendants in their personal capacities.

### (e) State Law Claims

Under Pennsylvania law, sovereign immunity applies to Commonwealth employees in both their official and personal capacities. *See Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. Ct. 1995); *see also Green v. Wetzel*, No. CV 18-93, 2019 WL 1426955, at *8 (W.D. Pa. Mar. 29, 2019); *Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). An action falls within the scope of employment if: (1) it is the kind that the employee is employed to perform; (2) it occurs substantially within the job's authorized time and space limits; and (3) it is motivated at least in part by a desire to serve the employer. *Flagg v. Int'l Union, Sec., Police, Fire Pros. of Am., Loc. 506*, 146 A.3d 300, 309 (Pa. Commw. Ct. 2016); *see Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010). Even "willful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress." *Mitchell*, 680 F. Supp. 2d at 682 (quoting *Cooper v. Beard*, Civ. A. No. 06–171, 2006 WL 3208783, at *16 (E.D. Pa. Nov. 2, 2006)).

It is clear from the face of the complaint that the individual defendants' actions fall within the scope of their employment. None of the exceptions to sovereign immunity apply here. *See* 42 Cons. Stat. § 8522(a). Accordingly, Herb, Tomei, and Heggenstaller, as employees of an agency of the Commonwealth, are entitled to the protections afforded by sovereign immunity. *See McGarth v. Johnson*, 67 F. Supp. 2d 499, 511 (E.D. Pa. 1999). Therefore, the Jagers' state law tort claims against Herb, Tomei, and Heggenstaller in their personal capacities are dismissed.

VI.     **Scope of Dismissal**

When a district court dismisses one or more claims pursuant to Rule 12(b)(6), the court must permit the plaintiff the opportunity to amend the complaint unless amendment would be inequitable or futile.  *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).  The claims against the DEP were already dismissed with prejudice.  For the reasons discussed above, the Jagers are unable to state a claim against the individual defendants in their official capacities because, like the claim against the DEP, the claims against them in their official capacities are barred by sovereign immunity.  The state law claims against the individual defendants in their personal capacities are also barred by sovereign immunity.

It is conceivable that the Jagers could state a § 1983 claim against the individual defendants in their personal capacities.  Thus, it is proper to allow the Jagers the opportunity to amend their complaint regarding their federal claims against Herb, Tomei, and Heggenstaller in their personal capacities.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARGARET M. JAGER and ROBERT W. JAGER,** | ) | **Case No. 3:20-cv-15** |
| **Plaintiffs,** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **v.** | ) | |
| **DEPARTMENT OF ENVIRONMENTAL PROTECTION, DAWN HERB, MICHAEL TOMEI, AND ELLIOT HEGGENSTALLER,** | ) | |
| **Defendants.** | ) | |

## ORDER

**AND NOW,** this 29th day of March, 2021, upon consideration of Defendants' Motion to Dismiss (ECF No. 29), **IT IS HEREBY ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for reconsideration of the dismissal with prejudice of the claims against the Pennsylvania Department of Environmental Protection (ECF No. 18) is **DENIED** and the claims against the Pennsylvania Department of Environmental Protection remain **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiffs' claims against Dawn Herb, Michael Tomei, and Elliot Heggenstallar in their official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiffs' state law claims against Dawn Herb, Michael Tomei, and Elliot Heggenstallar in their personal capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Plaintiffs' 42 U.S.C. § 1983 claims against Dawn Herb, Michael Tomei, and Elliot Heggenstallar in their personal capacities are **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs shall have until <u>April 26, 2021</u> to file a Second Amended Complaint.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**