IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET M. JAGER and ROBERT W. JAGER, | ) ) | Case No. 3:20-cv-15 |
| Plaintiffs, | ) ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| DAWN HERB, MICHAEL TOMEI, and ELLIOT HEGGENSTALLER, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendants Dawn Herb ("Herb"), Michael Tomei ("Tomei"), and Elliot Heggenstaller's ("Heggenstaller," collectively the "Defendants") Motion to Dismiss Plaintiffs Margaret M. Jager and Robert W. Jager's (the "Jagers") Second Amended Complaint. (ECF No. 47). The Second Amended Complaint includes numerous claims against the Defendants under both federal and state law.

The Defendants contend that the claims brought by the Jagers against them in their personal capacities all fail to a state claim upon which relief can be granted and must be dismissed. (ECF No. 48 at 3). The Jagers did not file a response to the Defendants' motion. For the following reasons, the Court **GRANTS** the Defendants' Motion to Dismiss the Jagers' Second Amended Complaint.

I.  Jurisdiction and Venue

This Court has subject-matter jurisdiction over the Jagers' constitutional claims because they arise under federal law. 28 U.S.C. §§ 1331, 1343(a)(3). This Court has subject-

matter jurisdiction over the Jagers' state law claims because they form part of the same case or controversy as their constitutional claims. 28 U.S.C. § 1367.

Venue is proper in this district because it embraces Clearfield County, where this action was originally filed. 28 U.S.C. § 1441(a).

## II.     Procedural Background

The Jagers initially filed this *pro se* lawsuit in the Court of Common Pleas of Clearfield County on January 13, 2020. (ECF No. 1-2). The Department of Environmental Protection ("DEP") timely removed the case to this Court on January 29, 2020. (ECF No. 1). The only defendant at that time was DEP. (*Id.*). DEP moved to dismiss the Complaint, arguing that sovereign immunity bars each of the Jagers' claims against it. (ECF No. 5). The Court granted DEP's motion and dismissed the claims against DEP with prejudice. (ECF No. 18). However, the Court permitted the Jagers to file an amended complaint against the Defendants not subject to sovereign immunity. (*Id.* at 6).

The Jagers then filed an Amended Complaint alleging numerous federal and state claims against DEP as well as several DEP employees—Dawn Herb, Michael Tomei, and Elliot Heggenstaller—in both their official and personal capacities. (ECF No. 26). DEP and the Defendants moved to dismiss the Amended Complaint arguing that (i) the claims against DEP had already been dismissed without leave to amend, (ii) the claims against the Defendants in their official capacities are barred by sovereign immunity, (iii) none of the federal claims against the individual defendants in their personal capacities state a claim, and (iv) all of the state law claims against the individual defendants are barred by sovereign immunity. (ECF Nos. 29, 30). In its Memorandum Opinion, the Court construed the Jagers'

renewed allegations against DEP as a motion to reconsider and denied the Jagers' motion. (ECF No. 41 at 11-15). The Court also dismissed the Jagers' claims against the Defendants in their official capacities with prejudice. (*Id.*). Further, the Court dismissed the Jagers' state law claims against the Defendants in their personal capacities with prejudice. (*Id.* at 25). However, the Court permitted the Jagers to file another amended complaint with respect to their § 1983 claims against the Defendants in their personal capacities. (*Id.*).

The Jagers filed a Second Amended Complaint alleging several federal and state law claims against the Defendants in their personal capacities. (ECF No. 46). The Defendants moved to dismiss the Second Amended Complaint arguing that none of the allegations brought by the Jagers against the Defendants in their personal capacities state a claim upon which relief can be granted. (ECF No. 48). The Jagers did not file a response. The Defendants' motion is ripe for disposition.

### III.   Factual Background[1]

This case arises from the Jagers' purchase of a farm in Pennsylvania in 2012. (ECF No. 1-2 at ¶ 1). The Second Amended Complaint does not provide the location of the farm. (ECF No. 46). Although the Jagers planned to move to the farm, medical issues forced them to refrain from doing so and they were unable to move in. (ECF No. 1-2 at ¶ 4). When the Jagers purchased the farm, there were large piles of manure all over the farm. (*Id.* at ¶ 1).

---

[1] Unless otherwise noted, the Court draws the following facts, which it accepts as true for purposes of deciding the motion, from the Jagers' Second Amended Complaint (ECF No. 46). Because the Second Amended Complaint omits some basic facts that were previously included in the Complaint (ECF No. 1) and the Amended Complaint (ECF No. 26) which are helpful for providing context and a coherent factual narrative, the Court also draws some facts from the Complaint and Amended Complaint.

The Jagers rented out the farm to a tenant who inflicted serious damage on the premises, and the prior owner failed to uphold her promise to continue handling the manure in an appropriate manner. (*Id.* at ¶¶ 4–5).

In April 2015, DEP contacted the Jagers and instructed them that they had to "remove the manure." (ECF No. 26 at 10). The Defendants told the Jagers that manure runoff from their property was going into the dry roadway ditches and polluting the waters of the Commonwealth. (ECF No. 46 at 3). The Defendants stated that the manure piles had to be at least 100 feet from the diches. (*Id.* at 3-4). However, at that time, the manure piles were over 200 feet away from the ditch and had never been within 100 feet of the roadway ditches. (*Id.*).

Herb is an attorney for DEP who previously worked at the Williamsport office and is now working at the Harrisburg office. (*Id.* at 9). Tomei was a manager at the Williamsport DEP office. (*Id.*). Heggenstaller is a Water Quality Specialist at the Williamsport DEP office. (*Id.*).

In their discussions with Robert Jager, Tomei and Heggenstaller "showed disdain and annoyance with him." (*Id.* at 11). Tomei and Heggenstaller were asked by the Jagers to show them where polluted water was going into the roadside ditch and Tomei and Heggenstaller "agreed that there was no polluted water going into the dry roadside ditch." (*Id.*). But, on the last day of Heggenstaller's inspection of the property, Heggenstaller said that manure was going down the driveway to the dry roadside ditch and was polluting the Commonwealth. (*Id.*). The report created after the inspection of the property also stated that water from the manure piles was running into the roadside ditch. (*Id.*) Margaret Jager

-4-

took photographs of the area around this time showing that no water was running down the driveway or running into the ditch. (*Id.*)

DEP eventually instituted some kind of legal proceeding with regard to the manure. (*Id.*). Instituting a legal proceeding contradicted a prior statement of Tomei that DEP would not be taking the Jagers to court. (*Id.*). Tomei told the Jagers that there were would not be a hearing, but he also told them that, if there were to be a hearing, it would be on the 27th of the month. (*Id.*). On the 26th, the Jagers "traveled up" to a location they believed the hearing might occur in an attempt to "make sure" they would be in attendance if a hearing actually happened. (*Id.*). The Jagers learned, "after the fact," that a hearing had taken place without them in attendance. (*Id.* at 12). The Jagers did not attend the hearing because they were never notified of the hearing and were given the incorrect date of the hearing by Tomei. (*Id.*). At the hearing which the Jagers missed, Judge Ledbetter stated that the Jagers "'should store the manure 100 feet from Commonwealth waters' and provide a best Management Plan to the DEP." (*Id.*). The Jagers subsequently submitted a management plan to the DEP. (*Id.*).

The Second Amended Complaint also references a second court hearing, referred to as a "penalty hearing" before Judge Quigley, that the Jagers attended. (*Id.* at 13). The Second Amended Complaint does not discuss what occurred at this hearing beyond that judge stated that the Jagers "had several issues [they] could appeal" and that the judge told Herb not to contact the bank. (*Id.*). There is also a passing reference in the Second Amended

Complaint that the Jagers were unable to sell the property to their investor, Eugene Smyth ("Smyth"), because DEP had become involved.[2] (*Id.* at 22).

The Jagers spent over $50,000 for supplies, equipment, and maintenance to move the manure, and Robert Jager had to give up his business in order to "concentrate all his time trying to get rid of the manure." (*Id.* at 10, 14). The Jagers' tenants also refused to pay rent. (*Id.* at 14). As a result of these expenses, Robert Jager being forced to give up his business, and tenants refusing to pay rent, the Jagers began having difficulty making their mortgage payments. (*Id.*).

The Jagers had a mortgage on the property with "Indiana Bank." (ECF No. 26 at 8). The Jagers fell behind on their mortgage payments and eventually owed the bank $31,000 to "get up to date" on their mortgage. (ECF No. 46 at 12). The Jagers had $10,000 in an IRA and $4,000 in cash that they intended to put toward the mortgage. (*Id.*). Margaret Jager had also inherited property in New York and, although it had not yet gone through probate, she had contracted with a neighbor in New York to sell the property for $31,000. (*Id.*).

The Defendants conspired together to interfere with the Jagers' mortgage contract with the bank and colluded with the bank to take the Jagers' property from them. (*Id.* at 12-13). In particular, Herb contacted the bank and informed them that the Jagers were not in compliance with DEP regulations. (*Id.* at 16). Without the Defendants' interference, the

---

[2] It is unclear whether this inability to sell their property is related to the lien placed on the property as referenced in the Amended Complaint. (ECF No. 26 at 21).

Jagers "would have been in a good position for the bank to make an agreement with [them] and wait for probate on money that [they] were sure to receive."[3] (*Id.* at 12).

The bank foreclosed on the property. (*Id.* at 21). At some point, the property was subject to a sheriff's sale. (*Id.*). Nobody bought the property at the sale, so the bank purchased it back. (*Id.*). The bank informed the Jagers that they could purchase it back from the bank for $150,000, but the bank later added that an additional $50,000 would be required to cover taxes owed on the property. (ECF Nos. 26 at 20; 46 at 22). The Jagers lined-up Smyth, an investor who promised to send a bank check to Indiana and help them buy back the property. (*Id.*). However, Smyth was informed that DEP had "become involved" and that the only way he could purchase the property was if the Jagers, their tenants, and their animals were no longer on the property. (*Id.* at 22).

As a result of Defendants' actions, the Jagers lost their farm and their home, and the Defendants' actions caused them to experience ill health, "general financial and personal destruction," and damage to their reputations. (*Id.* at 23-24).

## IV.   Legal Standard

The Court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails "to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Federal Rules of Civil Procedure demand only "a short and plain

---

[3] The Jagers also state that, with regard to the property in New York, "it looks as if we have lost all that money to the original trustee in NY who took it over. And we have not had time to attend to that problem." (ECF No. 46 at 13). Given the contradictory nature of these two statements, it is unclear what financial position the Jagers are in with respect to the disposition of the New York property.

statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claims are and the grounds upon which they rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[4] *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

V.   **Discussion**

   a.   **Consideration of *Pro Se* Complaints**

---

[4] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *see id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

Where, as here, a complaint is filed *pro se*, the Court "must liberally construe [the] pleadings" and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (citation omitted). However, "if a pro se complaint is so confusing or unintelligible that no party could possibly understand or reply to it" a court should dismiss the case pursuant to Rule 8(a). *In re Hudson*, No. CIV.A. 05-1611, 2006 WL 2380784, at *1 (W.D. Pa. Aug. 16, 2006) (quoting *Cole v. Commonwealth Federal*, No. CIV. A. 94–6099, 1994 WL 618464, *1 (E.D. Pa. Nov. 8, 1994)). Here, the Defendants express concerns that the Second Amended Complaint is so rambling and difficult to parse for specific claims, it fails to give the Defendants fair notice of what the Jagers are alleging. (ECF No. 48 at 2, 5). The Court has the same issues when attempting to parse the Second Amended Complaint. By no means is the Second Amended Complaint a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Nevertheless, the Defendants in their Motion attempt to parse the Second Amended Complaint and address a myriad of possible claims in it. (ECF No. 48). The Court does the same and addresses the claims that it is able to identify in the Second Amended Complaint.

The Jagers bring numerous state law claims against the Defendants in their personal capacities for: collusion, tortious interference with a contract, conspiracy, and intentional and negligent infliction of emotional distress. (ECF No. 46). The Jagers also bring claims against the Defendants in their personal capacities under 42 U.S.C. § 1983 for denial of their Fourteenth Amendment right to procedural and substantive due process and Fourteenth Amendment right to equal protection. (*Id.*).

### b. The Jagers Have Improperly Brought State Law Claims Against the Defendants in their Personal Capacities

In its previous memorandum opinion, the Court dismissed the Jagers' state law claims against the Defendants in their personal capacities with prejudice. (ECF No. 41 at 24, 26). The Court did not grant the Jagers leave to amend their state law claims against the Defendants in their personal capacities. (*Id.*). The Jagers' Second Amended Complaint, however, includes state law claims against the Defendants in their personal capacities. (ECF No. 46).

In reviewing the Jagers' Second Amended Complaint, the Court finds no intervening change in controlling law, no new evidence that was previously unavailable, nor any need to correct a clear error of law or fact that would justify the Court entertaining the Jager's renewed state law claims against the Defendants in their personal capacities as a motion to reconsider. *See U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014) (quoting *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999)). As such, the Court will not consider the Jagers' improperly brought state law claims against the Defendants in their personal capacities.

### c. Statute of Limitations

The Defendants move to dismiss the Jagers' federal claims under Rule 12(b)(6) because they are barred by the statute of limitations. The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The statute of limitations for a

§ 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons. Stat. § 5524(2); *see also Kach v. Hose*, 589 F.3d 626, 634–35 (3d Cir. 2009).

The running of the statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). Where the bar is not apparent on the face of the complaint, a statute of limitations defense is to be pleaded in the answer. *See Robinson*, 313 F.3d at 135.

Here, for substantially the same reasons given in its previous memorandum opinion, the Court denies the Defendants' motion to dismiss on the grounds that the Jagers' claims are time-barred by the statute of limitations. (ECF No. 41). Although it appears likely that some of events in the Complaint occurred outside the statute of limitations, it is not apparent on the face of the Complaint. (ECF No. 46). The Second Amended Complaint is sparse on the dates of events. Indeed, the only year for a specific event listed in the complaint is that "[i]n 2015 the DEP came by and told us that we were polluting the Commonwealth." (ECF No. 46 at 3). This appears to be the beginning of the Jagers' interactions with the Defendants. The Complaint was filed on January 13, 2020, and the Second Amended Complaint was filed on May 26, 2021. (ECF Nos. 1-2, 46). Thus, assuming that all of the factual allegations in the Second Amended Complaint occurred prior to the

date the Complaint was filed, all that is apparent on the face of the Second Amended Complaint is that the events in question occurred sometime between 2015 and January 2020. Accordingly, the statute of limitations defense is not apparent on the face of the complaint and the motion to dismiss for failure to state a claim under Rule 12(b)(6) for the claims being barred by the statute of limitations is denied.

d. **Federal Claims Under § 1983**

In its relevant part, 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

Section 1983 does not create any substantive rights, but rather provides a remedy for violations of a federal constitutional or statutory right. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid § 1983 claim, a plaintiff "must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). If a § 1983 claim is based on a Due Process violation—either substantive or procedural—the plaintiff must allege the deprivation of a constitutionally protected interest. *See O'Donnell v. Simon*, 362 F. App'x 300, 303 n.3 (3d Cir. 2010) (citing *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1256 (3d Cir. 1994)).

In a § 1983 action, "a plaintiff must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, No. 1:04-cv-1990, 2006

WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir.2006)). "Individual liability can be imposed under § 1983 only if the defendant played an 'affirmative part' in the alleged misconduct." *Alexander v. Fritch*, 396 F. App'x 867, 874–75 (3d Cir. 2010) (per curiam). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Allegations of personal involvement must be made with "appropriate particularity." *Id.* Thus, a plaintiff seeking relief under § 1983 must plausibly allege "with appropriate particularity" that each defendant was personally involved in the purportedly wrongful conduct *Scheing v. Fountain*, 729 F. App'x 175, 178 (3d Cir. 2018).

The Second Amended Complaint alleges violations of the Jagers' Fourteenth Amendment right to due process (procedural and substantive) and Fourteenth Amendment right to equal protection. (ECF No. 46 at 9-10, 17, 20-21).

The Defendants contend that the Second Amended Complaint does not make sufficient factual allegations to support the contention that the Defendants were personally involved in the conduct underlying the Jagers' § 1983 claims and, even if it does, the Second Amended Complaint nonetheless fails to state a claim under § 1983. (ECF No. 48 at 6-9).

The Second Amended Complaint fails to allege with sufficient particularity that any individual defendant was personally involved in the purportedly wrongful conduct. There are only a few instances where the Second Amended Complaint alleges that a particular Defendant took an action. The instances the Court identifies are: (1) Tomei "threatened [the Jagers] with jail or huge fines if [the Jagers] did not get rid of the manure" (ECF No. 46 at 3); (2) Heggenstaller would "harass" the Jagers by stating they were "polluting the

Commonwealth" (*Id.*); (3) Tomei and Heggenstaller "showed disdain and annoyance with [Robert Jager] because he followed them around and asked them to show, in the presence of Plaintiff Margaret, where polluted water was going into the ditch on its way to the Commonwealth" (*Id.* at 11); (4) Tomei told the Jagers that they would not be taken to Court which "lulled [them] into a false sense of security" (*Id.*); (5) Tomei told the Jagers that "there would not be a hearing but if something changed it might be on the 27th" (*Id.*); and (6) Herb said she was going to contact the Jagers' bank to tell them that they were not in compliance with DEP's regulations and subsequently contacted the bank and told it the Jagers were not in compliance. (*Id.* at 13).

Allegations like these fail to adequately allege that Herb, Tomei, or Heggenstaller were personally involved in any alleged violations of the Jagers' constitutional rights. Further, the allegations are so devoid of particularity and "factual enhancement" that they do not permit the Court to infer that any of these defendants personally participated in depriving the Jagers of any of their constitutional rights. *Scheing*, 729 F. App'x at 179 (quoting *Iqbal*, 556 U.S. at 678).

Nevertheless, even assuming the Jagers had sufficiently alleged that Herb, Tomei, and/or Heggenstaller were personally involved in any alleged violations of the Jagers' constitutional rights, the Jagers' have failed to state a claim under § 1983 that their Fourteenth Amendment Due Process and Equal Protections rights were violated.

  (i)  **Fourteenth Amendment: Procedural Due Process**

A plaintiff who brings a § 1983 suit alleging a violation of procedural due process must allege and prove that: (1) he or she was deprived of a protected liberty or property

interest; (2) this deprivation was without due process; (3) the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) the defendant was acting under color of state law; and (5) the plaintiff suffered injury as a result of the deprivation without due process. *Sample v. Diecks*, 885 F.2d 1099, 1113–14 (3d Cir. 1989).

Although the Second Amended Complaint appears to allege that the Jagers' procedural due process rights were violated, it fails to allege facts that could plausibly support a claim that their rights were violated. The Second Amended Complaint alleges that the Jagers were deprived of their farm. It references a hearing before Judge Ledbetter and a penalty hearing before Judge Quigley but gives no indication of anything that could be considered a deprivation of property having occurred at either hearing. (ECF No. 46 at 12-13).

Indeed, for substantially the same reasons as stated in the Court's previous memorandum opinion, it is clear that it was the bank that foreclosed on the farm because the Jagers were $31,000 behind in mortgage payments—not the Defendants, that deprived the Jagers of their property. The only action by one of the Defendants alleged in the Second Amended Complaint related to the foreclosure by the bank is Tomei informing the bank that the farm was not in compliance with DEP regulations. (ECF No. 46 at 13). The causal link between Tomei telling the bank about the farm not being in compliance and the foreclosure is so vague, attenuated, and implausible that it fails to state a claim.

The Second Amended Complaint also appears to allege a procedural due process violation because the Jagers were not notified of the hearing before Judge Ledbetter on the

26th. (ECF No. 46 at 11-12). As the Court previously stated in its memorandum opinion, the only identifiable action by one of the Defendants is Tomei stating that that a hearing would likely not be held but telling the Jagers that "if something changed [the hearing] might be on the 27th." (ECF No. 41 at 19-22). This fails to allege a procedural due process violation. The Jagers do not allege in the Second Amended Complaint that they were deprived of a protected property interest at this hearing or that they suffered any injury as a result of this hearing. The Jagers allege that, at the hearing, the judge only stated that they should "'store the manure 100 feet from the Commonwealth waters' and provide a best Management Plan to the DEP." (ECF No. 46 at 11-12). The Jagers state that they subsequently provided the DEP with a best management plan and that they were "always over 100 ft away from the ditch . . . thereby adhering to the DEP's standard rules." (*Id.*) Thus, the Jagers do not allege that anything substantive occurred at this hearing. Further, attendance at a hearing is not itself a liberty or property interest and not attending the hearing itself does not constitute and injury.

  (ii)  **Fourteenth Amendment: Substantive Due Process**

A violation of substantive due process occurs if a government official "engages in 'an abuse of executive power so clearly unjustified by *any* legitimate objective of law enforcement' that it is barred by the Fourteenth Amendment." *Button v. Snelson*, 679 F. App'x 150, 153 (3d Cir. 2017) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). To establish a substantive due process claim under § 1983, a plaintiff must show that the defendants (1) deprived the plaintiff of a substantive due process right (2) while acting under color of law. *Id.* Under the first prong, the plaintiff must show that the "particular

interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). "[O]nly the most egregious official conduct" meets the "shocks the conscience standard." *United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003) (quoting *Lewis*, 523 U.S. at 846).

The Second Amended Complaint does not allege that any of the Defendants deprived the Jagers of a protected interest. Further, none of the Defendants' actions could plausibly be construed as sufficiently conscience-shocking to support a substantive due process claim. *See Pahler v. City of Wilkes-Barre*, 31 F. App'x 69, 72 (3d Cir. 2002); *R.B. v. Westmoreland Cnty.*, 526 F. App'x 181, 186 (3d Cir. 2013). Accordingly, the Second Amended Complaint fails to allege a Fourteenth Amendment substantive due process claim.

(iii) **Fourteenth Amendment: Equal Protection**

The Jagers allege a violation of the Equal Protection Clause because DEP targeted them for violating environmental regulations for having a pile of horse manure less than 100 feet from a roadside ditch, whereas DEP did not target a neighbor whose cattle stand and defecate in a river. (ECF No. 46 at 20-21).

To state a § 1983 equal protection claim a plaintiff must allege that: (1) he or she is a member of a protected class and (2) he or she received different treatment than that received by other similarly situated individuals. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir.1992). The Jagers do not adequately allege either element. There is nothing in the Second Amended Complaint to suggest that the Jagers are members of a protected class. Nor are the Jagers similarly situated to the owners of the herd of cattle—the environmental

-17-

impacts caused by runoff from non-moving large piles of manure going into a roadside ditch are different in relevant respects from cattle that occasionally stand in a river and defecate in the river. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (explaining that to be similarly situated a comparator must be alike "in all relevant aspects" (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Therefore, the Second Amended Complaint does not state an equal protection claim.

Accordingly, the Jagers have not stated a § 1983 claim against any of the Defendants in their personal capacities.

## VI.  Scope of Dismissal

When a district court dismisses one or more claims pursuant to Rule 12(b)(6), the court must permit the plaintiff the opportunity to amend the complaint unless amendment would be inequitable or futile. *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). The state law claims against the Defendants were already dismissed with prejudice (ECF No. 41). For the reasons discussed above, the Jagers are unable to state a § 1983 claim against the Defendants in their personal capacities. The Court finds that permitting the Jagers to further amend their complaint against the Defendants would be futile. 515 F.3d at 236.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET M. JAGER and ROBERT W. JAGER, | ) ) | Case No. 3:20-cv-15 |
| Plaintiffs, | ) ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| DAWN HERB, MICHAEL TOMEI, AND ELLIOT HEGGENSTALLER, | ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 20th day of December, 2021, upon consideration of Defendants' Motion to Dismiss (ECF No. 47), **IT IS HEREBY ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' 42 U.S.C. § 1983 claims against Dawn Herb, Michael Tomei, and Elliot Heggenstaller in their personal capacities are **DISMISSED WITH PREJUDICE**.

The Clerk is to mark this case closed.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**